Howard v A.O. Smith Water Prods. (2023 NY Slip Op 00017)

Howard v A.O. Smith Water Prods.

2023 NY Slip Op 00017

Decided on January 5, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 5, 2023

534550
[*1]Albert O. Howard et al., Respondents.
v
A.O. Smith Water Products et al., Defendants, and Armstrong Pumps Inc., Appellant.

Calendar Date:November 21, 2022

Before:Egan Jr., J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

The Cook Group, PLLC, New York City (Ryan W. Sweeney of counsel), for appellant.
Belluck & Fox, LLP, New York City (Seth A. Dymond of counsel), for respondents.

McShan, J.
Appeal from an order of the Supreme Court (Erin P. Gall, J.), entered December 13, 2021 in Schenectady County, which denied a motion by defendant Armstrong Pumps Inc. for summary judgment dismissing the complaint against it.
Plaintiff Albert O. Howard was diagnosed with mesothelioma in December 2020. Howard and his spouse, derivatively, commenced this action alleging, among other things, that his illness was caused by his exposure to asbestos products manufactured by defendant Armstrong Pumps Inc. (hereinafter defendant), among others, while serving on different submarines during his career in the US Navy from 1961 through 1978. After joinder of issue and discovery, defendant moved for summary judgment dismissing the complaint against it, contending, among other things, that Howard could have not been exposed to any products it manufactured during his service in the US Navy because defendant only came into existence in 1965, which postdated the commissioning of the vessels Howard served on. Plaintiffs opposed the motion, arguing that Howard unequivocally identified defendant's pumps as a source of his asbestos exposure and numerous questions of fact exist precluding summary judgment. Supreme Court denied defendant's motion, and defendant appeals.
"In order to establish entitlement to judgment as a matter of law, defendant[] bore the initial burden of demonstrating that [its] respective products 'could not have contributed to the causation' of [Howard]'s asbestos-related injuries" (O'Connor v Aerco Intl., Inc., 152 AD3d 841, 842 [3d Dept 2017] [citation omitted], quoting Matter of New York City Asbestos Litig., 116 AD3d 545, 545 [1st Dept 2014]; see Reid v Georgia-Pacific Corp., 212 AD2d 462, 463 [1st Dept 1995]). Defendant could not prevail on its motion for summary judgment by "merely pointing to gaps in . . . plaintiff[s'] proof" (O'Connor v Aerco Intl., Inc., 152 AD3d at 842; see Dyer v Amchem Prods. Inc., 207 AD3d 408, 409 [1st Dept 2022]; Koulermos v A.O. Smith Water Prods., 137 AD3d 575, 576 [1st Dept 2016]). In other words, "[defendant] could not simply argue that plaintiff[s] could not affirmatively prove causation, but rather it had to affirmatively prove, as a matter of law, that there was no causation" (Dyer v Amchem Prods. Inc., 207 AD3d at 409; see Matter of New York City Asbestos Litig., 146 AD3d 700, 700 [1st Dept 2017]).
Viewing the evidence in the light most favorable to plaintiffs and granting them the benefit of every favorable inference (see O'Connor v Aerco Intl., Inc., 152 AD3d at 843; Wells v 3M Co., 137 AD3d 1556, 1559 [3d Dept 2016]), we find that defendant's submissions fail to conclusively establish that its products could not have been present on the US Navy vessels that Howard worked on during the period following defendant's incorporation, and that its products could not have caused Howard's injuries. Howard's lengthy deposition testimony submitted by defendant in support of its motion describes his extensive career [*2]in the Navy and his service on various nuclear submarines. Relevant to this appeal, Howard testified to his familiarity with the various components in those vessels including a wide range of pumps for different engineering systems. Howard directly identified defendant's pumps among the many different manufacturers that he observed during his service and noted that defendant's pumps were tagged with the Armstrong name and were generally "Navy gray." Although he was unspecific as to the precise vessels where he observed defendant's pumps, Howard generally noted that he believed he encountered them on each of the vessels he served on. He also elaborated that defendant's pumps were predominantly located in the "propulsion plant" and "lube oil or condensate" systems. According to Howard, his duties aboard these various vessels required, among other things, that he directly supervise maintenance on defendant's pumps, which included asbestos-containing gaskets, packing and insulation. Howard stated that he would work in the immediate vicinity of the pumps when the gaskets were removed and scraped from the pumps, and when packing and insulation on the pumps was removed and replaced. Howard noted that defendant's pumps would handle whatever temperature of water called for in the particular system that the pump was being utilized, and that would have included "hot liquids that would have required insulation and that insulation would most certainly be in . . . asbestos blankets." Howard also stated that defendant's manual was referenced any time that work was called for on the pumps. Howard further explained that nuclear submarines, such as those that he was assigned to, were "overhaul[ed]" every three to five years, which generally entailed the repair or replacement of various pieces of machinery, including the various pumps onboard.
In support of its motion, defendant principally relies upon the three-page affidavit of Jeffrey Martin, a compliance/warranty engineer who began working for defendant in 2007. However, we find that his affidavit and the representations therein fail to establish the absence of a material question of fact as to the presence of defendant's pumps on those vessels Howard served on after defendant came into existence (see Matter of New York City Asbestos Litig., 123 AD3d 498, 499 [1st Dept 2014]; Knee v A.W. Chesterton Co., 52 AD3d 355, 355-356 [1st Dept 2008]). Howard's failure to specify the exact vessels where he observed defendant's pumps is not fatal to plaintiffs' action, and the testimony concerning the routine overhauls of the vessels creates an issue of fact as to whether defendant's pumps could have made their way on the relevant vessels after they were first commissioned (see Koulermos v A.O. Smith Water Prods., 137 AD3d at 576; Matter of New York City Asbestos Litig., 122 AD3d 520, 521 [1st Dept 2014]; Matter of New York City Asbestos Litig., 116 AD3d at 545; see also Reid v Georgia-Pacific Corp., 212 AD2d at 463). Relatedly[*3], we are unpersuaded by Martin's averments concerning US Navy standards for procurement of pumps for its vessels, as he fails to identify his basis of knowledge for his conclusions, or whether there were any specific standards that were applicable during the relevant timeframe (see Matter of New York City Asbestos Litig., 123 AD3d at 499). We similarly conclude that Martin's representation that defendant's pumps would not have required external insulation to properly function as intended is insufficient to warrant summary judgment as to the duty to warn, as his affidavit fails to address the specific application for the pumps at issue; to wit, the use of such pumps on a nuclear submarine (see Berkowitz v A.C. & S., Inc., 288 AD2d 148, 149-150 [1st Dept 2001]). Defendant's remaining arguments are clearly intended at pointing to deficiencies in Howard's testimony concerning his recollection of the exact time and place that he observed defendant's pumps, which is insufficient to meet its burden on its motion (see O'Connor v Aerco Intl., Inc., 152 AD3d at 843-844; Ricci v A.O. Smith Water Prods. Co., 143 AD3d 516, 516 [1st Dept 2016]; see also Matter of New York City Asbestos Litig. [Brooklyn Nav. Shipyard Cases], 188 AD2d 214, 225 [1st Dept 1993], affd 82 NY2d 821 [1993]).
Even assuming, arguendo, that defendant had met its burden, we find that plaintiffs' opposition papers are sufficient to raise factual issues as to the existence of defendant's products on the vessels in question from which defendant's liability could be reasonably inferred (see Root v Eastern Refractories Co., Inc., 13 AD3d 1187, 1188 [4th Dept 2004]; Matter of Eighth Jud. Dist. Asbestos Litig., 269 AD2d 749, 750 [4th Dept 2000]; Lloyd v W.R. Grace & Co.-Conn., 215 AD2d 177, 177 [1st Dept 1995]; Reid v Georgia-Pacific Corp., 212 AD2d at 463). Accordingly, we find that defendant's motion was properly denied to the extent that it sought dismissal of plaintiffs' claims in their entirety.
We do, however, note that plaintiffs have conceded that defendant could not be liable for any potential exposure that may have occurred during Howard's service prior to defendant's incorporation in December 1965 and have affirmatively represented that they are not seeking relief from defendant on that basis. Accordingly, we agree with defendant that partial summary judgment to that extent is appropriate.
Egan Jr., J.P., Aarons, Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as denied that part of defendant Armstrong Pumps Inc.'s motion for summary judgment on plaintiffs' claims alleging asbestos exposure from defendant's products prior to December 20, 1965; motion granted to that extent; and, as so modified, affirmed.